IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BOARD OF TRUSTEES OF THE | : CIVIL ACTION |
| NATIONAL ELEVATOR INDUSTRY | : NO. 17-05133 |
| HEALTH BENEFIT PLAN, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : |
| | : |
| KEVIN GOODSPEED, | : |
| | : |
| Defendant. | : |

**M E M O R A N D U M**

EDUARDO C. ROBRENO, J.                    MAY 1, 2019


        Defendant Kevin Goodspeed sought medical assistance
from a physician for a foot injury.  Defendant was a participant
covered by an employee benefit plan.  Under the benefit plan,
Defendant received $82,088.36 for his medical expenses.  After
the medical treatment was concluded, Defendant and his wife sued
the treating physician for claims premised on medical
malpractice.  The case against the physician was settled,
resulting in Defendant and his wife receiving a net settlement
of $304,463.22.

        The terms of the benefit plan required subrogation of
any recovery from the malpractice action, up to the amount paid

by the benefit plan for Defendant's medical costs.  Defendant
did not repay the benefit plan, but instead deposited the net
settlement proceeds into his and his wife's jointly-held bank
account.  The couple then made various purchases from the
account, including a $62,000 van.

As administrator of the plan, Plaintiff Board of
Trustees of the National Elevator Industry Health Benefit Plan
("the Plan") brought suit under the Employee Retirement Income
Security Act (ERISA) seeking reimbursement of the medical
benefits it paid on behalf of Defendant pursuant to the benefit
plan.  In an action brought under the ERISA, the Plan can only
obtain equitable relief.  Accordingly, a necessary element of
the Plan's claim is the existence of one or more specific funds
against which an equitable lien could be attached (either
because the fund itself is the "thing" at the heart of the
equity matter, or the fund is traceable to that "thing").

The Court ordered bifurcated discovery, proceeding
first on the issue of whether there is an appropriate fund for
an equitable lien, assuming that Plaintiff had a meritorious
claim.  Discovery on this issue has now been concluded.
Defendant has moved for summary judgment, arguing that the Plan
has failed to identify an appropriate fund.

The Court finds that there are specific funds against which an equitable lien could be attached through traceability, and therefore will deny Defendant's Motion for Summary Judgment.[1]

## I.    BACKGROUND

### A.    Parties and Allegations

Defendant resides in Flushing, New York, and participated in the employee benefit plan administrated by the Plan.  ECF No. 1 ¶¶ 2, 5, 8.  From late-2013 to mid-2014, Defendant sought medical treatment for heel pain from Dr. Howard Rose, an orthopedist.  ECF No. 27-6 ¶¶ 4-5.  Defendant claims to have suffered injuries to his Achilles tendon arising from Dr. Rose's treatment.  Id. ¶¶ 7-8.  In connection with the injuries, and under the terms of the benefit plan, the Plan paid $82,088.36 in medical expenses to various medical services providers on Defendant's behalf.  ECF No. 1 ¶¶ 9-10.

In September 2016, Defendant and his wife sued Dr. Rose in state court in New York, with Defendant bringing claims of medical malpractice and lack of informed consent, and his wife bringing a claim of loss of consortium.  See ECF No. 27-6.[2]  In late 2017, they settled their claims, netting $304,463.22

---

[1]      The case will proceed to discovery on the Plan's claim that it has a valid lien to enforce, and on the issue of allocation discussed later in this memorandum.

[2]      Goodspeed v. Rose, No. 805368/2016 (N.Y. Sup. Ct. Sept. 14, 2016).

after fees and costs were deducted, and the case was discontinued by stipulation on October 6, 2017.  ECF No. 27-1 ¶ 9, Ex. B.

The Plan learned about the New York case during its pendency, and on March 3, 2017, notified the couple's attorney, George J. Calcagnini, Esq.[3] of the Plan's lien on the proceeds of any settlement.  ECF No. 27 Ex. F.  Notwithstanding this correspondence, Mr. Calcagnini distributed to the couple the entire net settlement proceeds and did not submit or withhold any payment to the Plan.  ECF No. 27-1 ¶ 9; see also ECF No. 27 Ex G.

The Plan filed this action on November 13, 2017.  See ECF No. 1.  The Plan alleges that the terms of the benefit plan required Defendant to reimburse the Plan for the medical benefits paid from the proceeds of the settlement.  Id. ¶ 12.  The Plan alleges that Defendant has not done so, and so it is entitled to equitable relief under § 502(a)(3) of the ERISA (29 U.S.C. § 1132(a)(3)).[4]  Id. ¶¶ 18, 23.

---

[3]     George J. Calcagnini, Esq. also represents Defendant in this action.

[4]     Section 502(a)(3) of the ERISA states:

> A civil action may be brought by a
> participant, beneficiary, or fiduciary (A)
> to enjoin any act or practice which violates
> any provision of this subchapter or the
> terms of the plan, or (B) to obtain other

Defendant filed motions to dismiss or transfer the case, both of which the Court denied. ECF Nos. 3, 13. Because the ERISA allows only for equitable relief, the Plan's claims can only proceed if there is a fund against which equitable relief can be attached. See infra Section II.B. The Court ordered discovery to proceed first on whether such a fund exists.[5] ECF No. 12.

## B. Discovery concerning the Settlement

The material facts are undisputed.

As part of the agreement to resolve their claims against Dr. Rose, Defendant and his wife signed a general release. ECF No. 27-1 ¶ 8. "At no time was there ever an allocation of the recovery between [Defendant]'s claims and his wife's claims." Id.

The gross settlement proceeds were sent to Mr. Calcagnini, Esq., a New York attorney who represented Defendant and his wife and who represents Defendant in this action. Id. ¶ 9. "After accounting for his costs of bringing the tort

---

appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

(emphasis added).

[5]     The Court's Order stated that discovery was "limited to the issues of (i) the existence of a separately-identifiable fund, and (ii) the possession or control over all or part of a separately-identifiable fund by the Defendant." ECF No. 12 ¶ 6.

action and his fee for doing so, [Mr. Calcagnini] then remitted a check made payable to [Defendant and his wife] in the net sum of $304,463.22." Id.

On October 10, 2017, Defendant and his wife "deposited the check for the net settlement proceeds [totaling $304,463.22] into a jointly held bank account with rights of survivorship." Id. ¶ 10. The couple use the joint bank account "for a variety of purposes," including receiving pension payments. Id. "[T]he settlement funds from the tort action against Dr. Rose were commingled with various other monies" in the account. Id.

Between October 10, 2017 and May 31, 2018, the couple "spent or [withdrew] from [the joint] account the sum of $359,470." Id. ¶ 11. "Of the money withdrawn or transferred out of the [joint] account, [the couple] transferred $200,000 into a jointly owned certificate of deposit with rights of survivorship," and "jointly purchased a van for $62,000." Id. ¶ 12.

## II. LAW

### A. Summary Judgment

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Liberty Mut. Ins. Co. v. Sweeney, 689 F.3d 288, 292 (3d Cir. 2012). "A motion for summary judgment will not be defeated

by 'the mere existence' of some disputed facts, but will be denied when there is a genuine issue of material fact." Am. Eagle Outfitters v. Lyle & Scott Ltd., 584 F.3d 575, 581 (3d Cir. 2009) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)). A fact is "material" if proof of its existence or non-existence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

In this case, Defendant has sought summary judgment but the Plan has not. Once a party seeks resolution of a question by moving for summary judgment on that question, the court may grant summary judgment against the movant even in the absence of a cross-motion for summary judgment. See Fed. R. Civ. P. 56(f); Anderson v. Wachovia Mortg. Corp., 621 F.3d 261, 280 (3d Cir. 2010) ("[D]istrict courts are widely acknowledged to possess the power to enter summary judgments sua sponte, so long as the losing party was on notice that she had to come forward with all of her evidence." (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986)); see also, e.g., Albino v. Baca, 747 F.3d 1162, 1176 (9th Cir. 2014) ("We have long recognized that, where the party moving for summary judgment has had a full and fair opportunity to prove its case, but has not succeeded in doing so, a court may enter summary judgment sua

sponte for the nonmoving party."); O'Hara v. Gen. Motors Corp.,
508 F.3d 753, 764 (5th Cir. 2007) (Even though a defendant had
not moved for summary judgment on particular claims, "[the
plaintiffs had] placed these claims at issue by raising them in
their . . . reply brief to [defendant's] motion for summary
judgment . . . ."). Thus, in a case such as this, if a
defendant moves for summary judgment on only one of multiple
issues upon which the plaintiff must prevail, but the plaintiff
does not cross-file for summary judgment, the Court may enter
either summary judgment for the defendant or partial summary
judgment for the plaintiff.

## B. The ERISA and Equitable Liens

Congress enacted the ERISA "to provide a uniform
regulatory regime over employee benefit plans." Aetna Health
Inc. v. Davila, 542 U.S. 200, 208 (2004). In order to effect
that goal, the ERISA broadly pre-empts state laws pursuant to
§ 514(a). Id.; 29 U.S.C. § 1144(a); see also N.Y. State
Conference of Blue Cross & Blue Shield Plans v. Travelers Ins.
Co., 514 U.S. 645, 657 (1995) ("The basic thrust of the pre-
emption clause . . . was to avoid a multiplicity of regulation
in order to permit the nationally uniform administration of
employee benefit plans."); John Hancock Mut. Life Ins. Co. v.
Harris Tr. & Sav. Bank, 510 U.S. 86, 99 (1993) ("'[W]here
[state] law stands as an obstacle to the accomplishment of the

full purposes and objectives of Congress,' federal preemption occurs." (quoting <u>Silkwood v. Kerr-McGee Corp.</u>, 464 U.S. 238, 248 (1984)).

Under § 502(a)(3) of the ERISA, only equitable relief, not legal relief, can be granted in a civil suit seeking enforcement of the terms of the plan.  <u>Montanile v. Bd. of Trs. of Nat'l Elevator Indus. Health Benefit Plan</u>, 136 S. Ct. 651, 657 (2016).

Historically, equitable relief seeking restitution "typically involved enforcement of 'a constructive trust or an equitable lien, where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession.'" <u>Id.</u> (citing <u>Great-West Life & Annuity Ins. Co. v. Knudson</u>, 534 U.S. 204, 213 (2002)).

Equitable liens can arise by agreement where, for example, an employee benefit plan requires a beneficiary to convey the proceeds of any third-party settlement to the plan fiduciaries.  <u>Id.</u> at 658 (citing <u>Sereboff v. Mid Atl. Med. Servs., Inc.</u>, 547 U.S. 356, 363-64 (2006)).

Whether the equitable remedy arises because a defendant misappropriated property from the plaintiff or the parties had an agreement, "all types of equitable liens must be enforced against a specifically identified fund in the

9

defendant's possession." Id. at 659. This rule precludes a plaintiff from enforcing a lien against a defendant's general assets. Id.

The specificity requirement means that a lien can only be enforced "against specifically identified funds that remain in the defendant's possession or against traceable items that the defendant purchased with the funds (e.g., identifiable property like a car)." Id. at 658. If a defendant "dissipate[s] the entire fund on nontraceable items, that complete dissipation eliminate[s] the lien." Id. at 659. Non-traceable items include, for example, "services," "consumable items like food," and "travel." Id. at 655, 658.

In sum, when a "defendant once possessed a separate, identifiable fund to which the lien attached, but then dissipated it all on nontraceable items," a plaintiff cannot "enforce any type of equitable lien." Id. at 659. But if the dissipation is less than complete, an equitable lien may be imposed on the remainder of the fund.

## III. DISCUSSION

Defendant moved for summary judgment after the parties completed discovery on the existence of a suitable fund. The parties fully briefed the issues, and the motion is ripe for disposition.

Although the Plan did not move for summary judgment, the question of whether or not a fund against which a lien could be attached had been identified was squarely put at issue by Defendant's motion and Defendant has been fully heard on the matter. Resolution of Defendant's motion will determine whether or not a fund exists, and therefore whether or not this case can proceed under the ERISA.

A. **Separation**

Defendant argues that "there is no <u>separately</u> identifiable fund against which the lien may attach." ECF NO. 27-2 at 12 (emphasis added). "The use of words is to express ideas." The Federalist No. 37, at 229 (James Madison) (Clinton Rossiter ed., 1961). Here, Defendant uses "separate" to try to seed the idea that the fund must be entirely separate from anything else, <u>i.e.</u>, some type of stand-alone fund. The argument is erroneous and not supported by the case law cited by Defendant.

The concept of equitable relief is premised on the allegation that a defendant holds or at one time held a specific thing over which a claimant had some claim, in whole or in part; the claimant is not seeking relief from the defendant's other property (the general assets). <u>Montanile</u>, 136 S. Ct. at 658-59. If "separation" were a necessary fact for the imposition of an equitable lien, a claimant could never obtain such a lien over a

settlement which either exceeds the amount of benefits paid or includes monies for other claims brought against a third party who provided the settlement funds. Moreover, where a defendant converts the specific thing into something else, perhaps successively several times over, the question becomes whether the defendant's current possessions are traceable to the original, specific thing. The law does not require a claimant to meet Defendant's "separate-fund" test.

The Supreme Court has spoken on the matter. In Montanile, the administrator of a benefit plan sought reimbursement of the benefit plan's payment of approximately $120,000 in medical expenses on behalf of a participant who was injured by a drunk driver. 136 S. Ct. at 655. The participant sued the drunk driver, ultimately receiving a $500,000 gross settlement. Id. at 656. Prior to the participant receiving the settlement funds, the administrator informed the participant's attorney of the subrogation clause in the benefit plan and that the administrator was seeking reimbursement. Id. The participant's attorney refused to provide any reimbursement and informed the administrator that the funds would be transferred to the participant unless the administrator objected. Id. The attorney then transferred the settlement funds to the participant. Id.

Six months later, the administrator sued the participant under the ERISA. Id. At summary judgment, the district court rejected the participant's argument that he had spent all of the funds and "there was no specific, identifiable fund separate from his general assets" against which an equitable lien could be enforced. Id. The Eleventh Circuit affirmed, reasoning that even if the participant had dissipated the funds after the lien had attached, the dissipation did not destroy the underlying reimbursement obligation, and the administrator could recover out of the participant's general assets. Id.

The Supreme Court reversed the Eleventh Circuit. Id. at 657. The Court "consider[ed] what happens when a participant obtains a settlement fund from a third party, but spends the whole settlement on nontraceable items . . . ." Id. at 655. The Supreme Court discussed its previous ERISA jurisprudence concerning whether a claimant was bringing an allowed equitable claim or a forbidden legal claim. Id. at 657-58. The Supreme Court explained that the prior cases did not resolve the circumstances where a participant "who once possessed the settlement fund [had] dissipated it all," leaving the administrator only able to try to make a claim against the participant's "general assets." Id. at 658.

The Supreme Court turned to "standard equity treatises," and time-and-again stated that the lien was destroyed only when a participant expended the "entire fund" on "non-traceable" items.  Id. at 658-59.

The holding of Montanile is clear –- only complete dissipation of the specifically identifiable fund on nontraceable items will prevent the imposition of an equitable lien:

> We hold that, when a participant dissipates the whole settlement on nontraceable items, the fiduciary cannot bring a suit to attach the participant's general assets under § 502(a)(3) because the suit is not one for "appropriate equitable relief."  In this case, it is unclear whether the participant dissipated all of his settlement in this manner, so we remand for further proceedings.

Id. at 655.  Thus, to the extent any traceable item exists and is in a defendant's possession, an equitable lien may be attached if the claimant prevails on the merits.

**B.  Commingling and Tenancy by the Entireties / Joint Tenancy with Rights of Survivorship**

Defendant argues that by depositing the check for the net proceeds of the settlement into his and his wife's joint account, the specifically identifiable fund has been dissipated. Defendant relies on the reasoning of Carpenter Technology Corp. v. Weida, 300 F. Supp. 3d 663 (E.D. Pa. 2018).  ECF NO. 27-2 at 13-14.  The holding in Carpenter is that the act of depositing a

settlement into a joint checking account converts the
specifically identifiable fund into general assets against which
an equitable lien cannot be attached.  See 300 F. Supp. 3d at
671-72.  Respectfully, the Court is not persuaded that the
holding of Carpenter rests on firm ground.

First, the holding does not sit well with the key
inquiry into traceability, which considers whether dissipation
has occurred by spending the fund on nontraceable items, such as
services, travel, or food.  Montanile, 136 S. Ct. at 655, 658.

It is understood that equitable liens can only be
attached to traceable items.  The fund in Carpenter was not
"spent" on nontraceable items such as services, food, or travel
that resulted in dissipation of the fund.  Rather, the fund was
"spent" on a bank balance, a traceable asset.  Indeed, a
defendant can "spend" a fund on acquiring any type of asset,
whether it is a set of books containing the general
correspondence of President John Tyler, an antique Underwood
typewriter, or a BMW motorcycle.  The dispositive issue is the
traceability of the later-acquired items to the original fund,
and all of the foregoing are examples of non-consumable, non-
service, and non-travel items that are traceable to the specific
fund.

Second, the commingling argument based on Carpenter
also runs contrary to the Supreme Court's reasoning in Sereboff.

See 547 U.S. at 362-63.  In Sereboff, the plan participants were
a husband and wife who had been injured in an automobile
accident.  Id. at 359-60.  The participants sued multiple third
parties, and during the pendency of the litigation the plan
administrator informed the participants' attorney that the
administrator claimed a lien over $74,869.37 paid to the medical
services providers on the participants' behalf.  Id. at 360.
The participants refused to reimburse the plan, and the
administrator filed the federal lawsuit.  Id.  The parties
stipulated that the participants would preserve the lien amount
in an "investment account" until the case was finally resolved.
Id.  Importantly, the investment account held other monies.  See
Mid Atl. Med. Servs., LLC v. Sereboff, 407 F.3d 212, 218 (4th
Cir. 2005) ("By the stipulation . . . , $74,869.37 of the
settlement funds are preserved by the [participants] in their
investment accounts.  Although the funds have been placed in
accounts with the [participants]' other monies, they can
'clearly be traced to particular funds' recovered in the [state]
litigation." (citing Knudson, 534 U.S. at 213)).

        The Supreme Court held that the portion of the
settlement over which the administrator had placed a lien was
still within the possession and control of the participants,
even though the funds were held in an investment account along
with other funds.  Therefore, there was no impediment to

obtaining the money through equitable relief.  Sereboff, 547

U.S. at 362-63.  The Supreme Court rejected the participants'

attempts to construe as legal relief the administrator's suit to

obtain a "portion of the tort settlement" that was due to the

plaintiff "under the terms of the ERISA plan, set aside and

preserved [in the defendant's] investment accounts."  Id.

    Third Circuit authority also rebuts the commingling

argument.  In an albeit non-precedential opinion but one that

post-dates Carpenter, the Third Circuit applied Sereboff in U.S.

Renal Care Inc. v. WellSpan Health, 709 F. App'x 160 (3d Cir.

2018).  In Renal Care, the Third Circuit stated that

traceability was not lost when moneys were commingled with other

funds because the "particular share" could still be identified.

Renal Care, 709 F. App'x at 161-62 (citing Sereboff, 547 U.S. at

362-63, 364-65; Montanile, 136 S. Ct. at 660).  The Third

Circuit recognized the reasoning in Sereboff as a rejection of

the same type of commingling argument advanced by Defendant

here.

    Finally, Defendant claims that because the settlement

funds were deposited into a joint account owned by him and his

wife, creating a joint tenancy with rights of survivorship under

New York law, the settlement funds are immune to the reach of

the Plan.  See ECF No. 27-2 at 12-14.  Defendant relies solely

on Carpenter which rested on well-settled principles of

Pennsylvania law which insulate debtors from the reach of
judgment creditors by creating the legal entity of a tenancy by
the entirety which is separate and apart from the individual
spouses.

But reliance on authorities addressing debtor-creditor
law is inapposite here.  The Plan is not a creditor seeking to
enforce a judgment against a debtor and to obtain relief from
the debtor's general assets.  Rather, the Plan seeks to attach
an equitable lien upon traceable funds acquired by Defendant
prior to the creation of the purported joint tenancy with rights
of survivorship.  See Glen Falls Indem. Co. v. Golden, 148 F.
Supp. 41, 42 (D.D.C. 1957) (permitting attachment of an
equitable lien against residence held by the entirety of husband
and wife, when the purchase price of the residence was paid with
funds misappropriated by the husband); see also Watters v.
DeMilio, 16 Pa. D. & C.2d 747, 751 (Pa. Com. Pl. 1959) (allowing
attachment of a bank account held as a tenancy by the entireties
by the defendant and his wife, when the insolvent defendant
endorsed his paychecks to his wife who then deposited the checks
into the account); Patterson v. Hopkins, 371 A.2d 1378, 1382
(Pa. Super. Ct. 1977) (denying an entireties defense and
allowing a levy on "a checking account, dump truck, covered
wagon trailer, two boats, boat trailer, and tarpaulin," all of
which were held by the entireties by defendant and his wife,

when the entireties were created by defendant's fraudulent
conveyances).

   This is so because, to the extent an equitable lien
attaches to the fund and a defendant has knowledge of that lien,
the defendant cannot transfer that property to a joint tenancy
or entireties in order to prevent the plaintiff's assertion of
rights.[6]  The party against which an equitable lien (or
constructive trust) is asserted acts as trustee for the fund at
issue.  That party has no right to the fund, and cannot assert
any right to the fund by conveying it to a tenancy by the
entireties.[7]  Erie Cnty. v. Lamberton, 147 A. 86, 88 (Pa. 1929)
("'It is a familiar principle that neither a trustee nor any in
privity with him can acquire any right by a breach of the
trust', and tenants by entireties are in contemplation of law in
privity." (citations omitted)).

---

[6]    This principle applies with equal force even in
debtor-creditor cases, where "the use of a joint account
creating a tenancy by the entireties cannot be used for the
purpose of defrauding creditors of [one spouse]." Watters, 16
Pa. D. & C.2d at 751; see also Patterson, 371 A.2d at 1382
("Where a husband or wife conveys his or her individual property
to a tenancy by the entireties in fraud of creditors, the
defrauded creditors may execute on the property so
transferred.").

[7]    To the extent Defendant might argue that his wife had
no knowledge of the Plan's purported equitable lien, even if
true, she would be unjustly enriched by Defendant's action.
Thus, assuming the equitable lien is valid, "[i]n equity and
good conscience she should be required to refund the amount of
unjust enrichment." Glen Falls, 148 F. Supp. at 43.

Defendant calculated that under New York law, joint tenancy with rights of survivorship provides the same or similar types of protection as Pennsylvania law on tenancy by the entireties.  Even if the protections were the same, as Defendant argues, it makes no difference to the outcome here because, as pointed out above, a tenancy by the entireties in this case would not shield the settlement from the reach of the equitable lien.

Here, both the $200,000 certificate of deposit and the $62,000 van are traceable to the settlement fund.  Neither of these could be characterized as nontraceable items such as services, food, or travel.  The fact that both items first passed through the joint account owned by Defendant and his wife does not confer "nontraceable" status upon these two items.

C.   **Allocation**

Finally, Defendant argued that the lack of allocation in the settlement fund defeats the equitable lien.  See ECF No. 27-2 at 15.  In particular, Defendant argues that the settlement fund cannot be the initial fund because there was no allocation of the settlement between the two claims brought by Defendant (medical malpractice and lack of informed consent) and the one claim brought by his wife (loss of consortium).  Id.

The Court rejects this argument.  It is undeniable that at least part of the settlement fund was derived from

Defendant's claims in the New York litigation. Therefore, an
equitable lien can be attached to the settlement fund and any
items traceable to it. See Martin Sprocket & Gear, Inc. v.
Durrette, 2008 WL 11334180, at *9 (N.D. Ga. 2008).

Now that traceable assets have been identified, the
Court finds that the allocation of the settlement fund is now
properly at issue. Because the certificate or deposit and van
are traceable to the settlement fund, the issue of allocation
must now be addressed in the merits briefing at the conclusion
of all remaining discovery in this case. Therefore, the Court
will give the parties an opportunity to engage in discovery
(including appropriate expert discovery if warranted) and will
address allocation in combination with the merits.

**IV. CONCLUSION**

There is no genuine dispute of material fact
concerning the existence of funds that are traceable to the
settlement proceeds against which an equitable lien can be
imposed. The Court finds that there are specific funds against
which an equitable lien could be attached through traceability,
namely the $200,000 certificate of deposit and the $62,000 van.
Accordingly, Defendant's Motion for Summary Judgment will be
denied, and the Plan will be granted partial Summary Judgment.

The case will proceed to discovery on the issue of
allocation and on the merits of Plaintiff's claim.